# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00686-COA

**DONALD WILSON**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:                01/05/2024
TRIAL JUDGE:                     HON. JANNIE M. LEWIS-BLACKMON
COURT FROM WHICH APPEALED:       HOLMES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         THOMAS M. FORTNER
                                 ANDREW ARMAN MIRI
                                 VALORIE G. COCHRAN
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                     VACATED AND REMANDED - 07/28/2026
MOTION FOR REHEARING FILED:

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Donald Wilson filed a motion for post-conviction relief (PCR), challenging his 2017 convictions and sentences for second-degree murder and possession of a firearm by a felon as a non-violent habitual offender.  The Holmes County Circuit Court denied Wilson's PCR motion without an evidentiary hearing.

¶2.     Wilson appeals the court's ruling, raising several claims of error that he contends entitle him to an evidentiary hearing (e.g., his failure to knowingly plead guilty as a habitual offender).  He also argues that Count II of the indictment "omitted an essential element of the crime of Possession of a Firearm by a Convicted Felon, rendering Count II of the

indictment defective and void." Reviewing the record, our Court further noted that Count I of the indictment failed to allege the essential element that Wilson did, in fact, kill the victim; so we asked the parties to submit additional briefing on this issue.

¶3. We determine that because Counts I and II of the indictment each failed to contain an essential element of the crimes charged, the indictment is fatally defective. We therefore vacate Wilson's convictions and sentences and remand for further action by a grand jury.[1] *See Fulton v. State*, 146 So. 3d 975, 979-80 (¶14) (Miss. 2014) (holding that a fatally defective indictment required vacating the defendant's sentence (citing *Hall v. State*, 127 So. 3d 202, 207 (¶16) (Miss. 2013))).[2]

### Facts and Procedural History

¶4. On February 3, 2017, a Holmes County Circuit Court grand jury indicted Wilson as a habitual offender of first-degree murder (Count I) and possession of a firearm by a felon

---

[1] Based on our holding that the indictment was fatally defective, Wilson's claim that he was entitled to an evidentiary hearing is moot.

We would note, however, that although the indictment did inform Wilson that he was being charged as a habitual offender, no evidence or testimony from the plea colloquy indicated that Wilson was aware he was being sentenced as a habitual offender. Furthermore, nothing in the record indicates when revisions to the plea petition were made or if Wilson knew of these changes when he signed the petition. An affidavit by Wilson's trial attorney states that she "advised Mr. Wilson that he would be *charged* as a habitual offender," but she does not specify when this occurred. (Emphasis added).

[2] In *Hall*, the supreme court held that the appropriate remedy when a defendant is "convicted of a crime for which he was not indicted" is to reverse and vacate the sentence, as the supreme court found "no legal authority to acquit [a defendant] by reversing and rendering judgment[.]" *Hall*, 127 So. 3d at 207 (¶¶16-17).

2

(Count II).[3]  The indictment read:

## COUNT I
## FIRST DEGREE MURDER

DONALD WILSON on or about the 3rd day of July, 2016, in Holmes County, Mississippi, did unlawfully, feloniously, willfully with deliberate design to effect the death of Christopher Robertson, a human being, to wit: by shooting Christopher Robertson, in violation of Section 97-3-19(l)(a) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

## COUNT II
## POSSESSION OF A FIREARM BY A CONVICTED FELON

DONALD WILSON on or about the 3rd day of July, 2016, in Holmes County, Mississippi, did unlawfully, feloniously, willfully and knowingly, after having been convicted of a felony under the laws of the state of Mississippi, to-wit: in Cause No. 11-0054 for Aggravated Assault on October 15, 2012 and in Cause No. 12-0071 for Aggravated Assault on May 9, 2013, in violation of Section 97-37-5 of the Mississippi Code of 1972, as amended, against the peace and dignity of the state of Mississippi.

The State later moved to amend the indictment on October 10, 2017, noting that the "State committed a scrivener's error by inadvertently leaving out the words 'did possess a firearm'" from the text of Count II of the indictment.

¶5.    On that same day, Wilson signed a petition to enter a guilty plea to second-degree murder.  During the plea colloquy, the circuit court informed Wilson of the charges against him, and Wilson entered guilty pleas to second-degree murder and possession of a firearm

---

[3] The indictment noted that Wilson had been previously convicted of at least two prior felonies (aggravated assault) for which he was sentenced to serve separate terms of one year or more.

3

by a felon. The court sentenced Wilson as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for Count I, with a credit of 491 days for time served, and to serve ten years for Count II, to run concurrently with the sentence for Count I.

¶6. On October 9, 2020, Wilson filed a PCR motion and subsequently filed a supplemental motion on December 6, 2022. On April 28, 2023, Wilson requested a hearing to consider all matters set forth in his initial and supplemental PCR motions. The circuit court held a motions hearing on October 23, 2023, to consider counsels' arguments as to whether Wilson was entitled to an evidentiary hearing. Wilson's attorney claimed: (1) that Wilson was not aware at the plea colloquy that he was being sentenced as a habitual offender; and (2) that Count II of the indictment was defective because it failed to contain an essential element (i.e., that Wilson possessed a firearm).

¶7. After reviewing "a copy of the plea colloquy of October 10, 2017; sentencing order, petition to enter plea of guilty, and affidavits of witnesses," the circuit court denied Wilson's PCR motion on January 5, 2024, finding "that the unimpeachable documentary evidence in the record belied petitioner[] Wilson's claims and therefore, no hearing is required in this case." On May 3, 2024, the court granted Wilson's request to enlarge the time for filing an appeal, and Wilson timely filed his notice of appeal on June 4, 2024.

**Standard of Review**

4

¶8.     "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Mallard v. State*, 362 So. 3d 88, 91 (¶13) (Miss. Ct. App. 2023) (quoting *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019)).

**Discussion**

## I.     Count I of the Indictment

¶9.     Count I of the indictment stated:

> DONALD WILSON on or about the 3rd day of July, 2016, in Holmes County, Mississippi, did unlawfully, feloniously, willfully with deliberate design to effect the death of Christopher Robertson, a human being, to wit: by shooting Christopher Robertson, in violation of Section 97-3-19(l)(a) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

It is evident that Count I failed to include an essential element of the crime of first-degree murder (i.e., that the defendant killed the victim). Because neither party raised this issue in their principal briefs, we asked the parties to file additional briefing to address two questions related to this issue.

¶10.    The first question was the following:

> On appeal of the trial court's denial of post-conviction relief, can the Court, of its own motion, consider the legal sufficiency of Count I of the indictment in light of the Court's decisions in *Hathorne v. State*, 376 So. 3d 1209, 1214-15 (¶19) (Miss. Ct. App. 2023), and *Strickland v. State*, 417 So. 3d 189, 192-93 (¶¶12-13) (Miss. Ct. App. 2025), concerning indictments that fail to allege all the essential elements of the offense?

In *Hathorne v. State*, 376 So. 3d 1209, 1211 (¶2) (Miss. 2023), the defendant was charged and convicted of possession of a controlled substance under Mississippi Code Annotated section 41-29-139. This Court affirmed his conviction and sentence on direct appeal. *Id*. at 1211 (¶3). The Mississippi Supreme Court granted Hathorne's application for leave to file a PCR motion based on the claim that his indictment was defective. *Id*. "In his PCR motion, Hathorne argued his indictment was defective because it failed to charge a crime—i.e., ethylone is not listed as a Schedule I controlled substance under [Mississippi Code Annotated section] 41-29-113." *Id*. at 1212 (¶8). After the trial court denied the PCR motion, Hathorne filed a notice of appeal. *Id*. at 1211 (¶4).

¶11. Although this Court "determined that Hathorne's indictment was defective and did not charge a crime," we "denied him relief, holding that [the defendant's] claim was procedurally barred by the Uniform Post-Conviction Collateral Relief Act (UPCCRA), because he could have raised this issue at trial and/or on direct appeal." *Id*. On petition for certiorari review, the supreme court agreed that the indictment was defective but disagreed with this Court that his claim was barred, reasoning:

> Our case law makes clear that "**a substantive defect in an indictment cannot be cured by extrinsic proof and is not waived by the failure to demur thereto.**" *Copeland* [*v. State*], 423 So. 2d [1333,] 1336 [(Miss. 1982)]. "This Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, **they may be raised at any time, including on appeal**." *State v. Berryhill*, 703 So. 2d 250, 254 (Miss. 1997). Further, "a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, and may not be waived." *Carson v. State*, 212 So. 3d 22, 31 (Miss. 2016) . . . (internal quotation mark omitted) (quoting *Ross v. State*, 954 So. 2d 968, 1015 (Miss.

6

2007)).  This Court's longstanding precedent places great emphasis on the protection of the right to challenge the sufficiency of an indictment. *See also State v. Buckhalter*, 119 So. 3d 1015, 1019 (Miss. 2013) (holding that a flawed indictment "affects a fundamental right").  "The constitutional right of the accused, to demand the nature and cause of the accusation against him, cannot be waived or surrendered, and therefore, if the indictment do[es] not contain sufficient description of the offense to notify the accused of the nature and cause of the accusation, it is a nullity, and may be objected to at any time." *Buford v. State*, 146 Miss. 66, 111 So. 850, 856 (1927) . . . (internal quotation marks omitted) (quoting *Newcomb v. State*, 37 Miss. 383 (1859)).  **Here, the indictment against Hathorne, as a nullity, was and is void, and a judgment of conviction based on a nullity "must necessarily be itself a nullity.**" *Ex parte Scott*, 70 Miss. 247, 11 So. 657 (1892).

*Id*. at 1214-15 (¶19) (emphasis added).

¶12.    More recently, in *Strickland v. State*, 417 So. 3d 189, 191 (¶¶3, 6) (Miss. Ct. App. 2025), this Court considered a defendant's argument that his indictment was defective because the charge for aggravated assault failed to include the phrase "a means likely to produce death or serious bodily injury," an essential element.  Reiterating the established rule "that an indictment charging a statutory offense must include all the essential elements of the crime, and the failure to do so renders the indictment void," we reversed the trial court's order denying the defendant's PCR motion and remanded for the court to set aside the guilty plea.  *Id*. at 192-93 (¶¶12, 14).

¶13.    The State asserts that these cases do not afford Wilson any relief because he has not argued error with regard to Count I, either before the trial court or on appeal.  *See, e.g.*, *Winters v. State*, 359 So. 3d 242, 248 (¶16) (Miss. Ct. App. 2023) ("Issues not raised in a motion for post-conviction relief are procedurally barred on appeal." (quoting *Bland v. State*,

7

312 So. 3d 417, 419 (¶11) (Miss. Ct. App. 2021))). In this instance, we disagree.

¶14. Mississippi Rule of Appellate Procedure 28(a)(3) provides: "No issue not distinctly identified shall be argued by counsel, except upon request of the court, *but the court may, at its option, notice a plain error not identified or distinctly specified*." (Emphasis added). "In certain contexts, [the Mississippi Supreme Court] 'has noted the existence of errors in trial proceedings affecting substantial rights of the defendants although they were not brought to the attention of the trial court or of this Court.'" *Cozart v. State*, 226 So. 3d 574, 580 (¶22) (Miss. 2017) (quoting *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991)).

¶15. In *Flowers v. State*, 35 So. 3d 516, 517-19 (¶¶3-5) (Miss. 2010), the supreme court held that although the defendant did not object at trial, nor challenge his indictment on appeal, plain-error review was warranted, as the indictment was defective by charging the defendant with a crime that did not exist at the time he committed it. We agree with Wilson that this Court has authority to conduct a plain-error review of whether Count I rendered the indictment fatally defective.

¶16. The second issue that we asked the parties to address was the following:

> Is Count I of the indictment legally sufficient although the charging portion of the indictment does not allege that the Defendant did kill and murder the victim or that the victim died as a result of having been shot?

"The sufficiency of an indictment is a question of law, and therefore is reviewed de novo." *Carson*, 212 So. 3d at 31 (¶34). "So long as a fair reading of the indictment, taken as a whole, clearly describes the nature and cause of the charge against the accused, the

8

indictment is legally sufficient." *Berry v. State*, 996 So. 2d 782, 787 (¶24) (Miss. 2008). The Mississippi Supreme Court has further held that "[a]n indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013).

¶17.    Count I charged Wilson with first-degree murder under Mississippi Code Annotated section 97-3-19(1)(a), which states:  "The *killing of a human being* without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person *killed*, or of any human being."   Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2016) (emphasis added).  However, as already noted, Count I did not allege that Wilson killed the victim or that he did so "without the authority of law by any means or in any manner."  As it is evident that the indictment was defective, the question remains whether these deficiencies render the indictment void.

¶18.    This Court has held that "to be sufficient, an indictment must set forth the constituent elements of a criminal offense." *Payne v. State*, 282 So. 3d 432, 438 (¶20) (Miss. Ct. App. 2019) (citing *Thomas*, 126 So. 3d at 879 (¶7)).  This Court, in a five-to-five opinion, addressed this exact issue in *Daniels v. State*, 385 So. 3d 848 (Miss. Ct. App. 2024).  The defendant in *Daniels* argued that his murder count in his indictment was legally insufficient, as it failed to allege that a killing of any human being occurred.  *Id*. at 849, 852 (¶¶1, 12). The indictment in *Daniels* read:

> Darry Daniels[,] on or about the 24th day of June, 2019, in Humphreys County, did unlawfully, feloniously, and willfully with deliberate design to

effect the death of Telvin Ray Washington without the authority of law in violation of Section 97-3-19 of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

*Id*. at 852 (¶11).  Relying on the Mississippi Supreme Court's holding in *Tran v. State*, 962 So. 2d 1237 (Miss. 2007), the lead opinion reasoned that the failure to allege that a killing occurred did not render the indictment fatally defective because Daniels "still had 'a fair and adequate opportunity to prepare for and defend against' the indicted charge."  *Id*. at (¶12) (quoting *Tran*, 962 So. 2d at 1241 (¶16)).

¶19.    However, in a separate opinion joined by four other judges, Judge Emfinger asserted that the omission in the indictment was not harmless error "for three reasons": (1) "[t]he indictment in *Tran* tracked the language of the statute"; (2) *Tran* was decided prior to the adoption of the Mississippi Rules of Criminal Procedure, which requires that an indictment "contain the essential elements of the offense charged";[4] and (3) the indictment did "not charge any crime at all and [was] void."  *Id*. at 860-61 (¶¶49-51).[5]  Therefore, the separate opinion determined that the indictment's failure to allege the arguably most important element—that Daniels killed the victim—warranted reversal of the conviction.  *Id*. at 861

---

[4] The comment to Rule 14.1 of the Mississippi Rules of Criminal Procedure states: "Rule 14.1(a) is based upon former Rule 7.06 of the Uniform Rules of Circuit and County Court.  The rule now provides that, in addition to the essential facts constituting the offense charged, the indictment must also include the essential elements of the offense charged."

[5] Here, at best, the indictment charged Wilson with aggravated assault.  *See* Miss. Code Ann. § 97-3-7(2) (Supp. 2016) (stating that "[a] person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.)

(¶51). The State attempts to distinguish the present case from *Daniels* by noting that Wilson pled guilty to the charge of murder; "*Daniels* did not." However, this Court has recognized that "a valid guilty plea will not waive the defendant's right to assert that the indictment fails to charge an essential element of the crime." *Jenkins v. State*, 325 So. 3d 1195, 1198 (¶10) (Miss. Ct. App. 2021).

¶20. We find that Judge Emfinger's analysis in *Daniels* is supported by precedent and is persuasive to our discussion here. As we recognized in *Strickland*:

> The Mississippi Supreme Court has consistently held that an indictment charging a statutory offense must include all the essential elements of the crime, and the failure to do so renders the indictment void. *See Spears v. State*, 253 Miss. 108, 116, 175 So. 2d 158, 161-62 (1965); *Rogers v. State*, 198 Miss. 495, 22 So. 2d 550, 551 (1945); *May v. State*, 209 Miss. 579, 47 So. 2d 887, 888 (1950); *Crosby v. State*, 191 Miss. 173, 2 So. 2d 813, 815 (1941). "This failure to charge the defendant with a crime cognizable under Mississippi law is a plain, constitutional error and requires dismissal of the indictment and reversal of the conviction." *Thomas v. State*, 126 So. 3d 877, 880 (¶8) (Miss. 2013).

*Strickland*, 417 So. 3d at 192-93 (¶12).

¶21. Count I of the indictment did not track the language of the applicable statute and clearly does not meet the requirement of Mississippi Rule of Criminal Procedure 14.1 that the indictment contain "the essential facts and elements constituting the offense charged." We therefore find that the indictment is fatally defective and void.[6]

---

[6] Although the dissent asserts that this result fails to follow our "precedent in *Daniels*," we should clarify that the lead opinion in *Daniels* was not supported by a majority of this Court. As our Supreme Court has held, "a majority of all sitting judges is required to create precedent, and therefore, it follows that a plurality vote does not create a binding

## II. Count II of the Indictment

¶22. Count II of the indictment, as the State concedes on appeal, also failed to include an essential element—that Wilson actually "possessed a firearm." The indictment read:

**COUNT II**
**POSSESSION OF A FIREARM BY A CONVICTED FELON**

> DONALD WILSON on or about the 3rd day of July, 2016, in Holmes County, Mississippi, did unlawfully, feloniously, willfully and knowingly, after having been convicted of a felony under the laws of the state of Mississippi, to-wit: in Cause No. 11-0054 for Aggravated Assault on October 15, 2012 and in Cause No. 12-0071 for Aggravated Assault on May 9, 2013, in violation of Section 97-37-5 of the Mississippi Code of 1972, as amended, against the peace and dignity of the state of Mississippi.

On the day Wilson entered his guilty plea, the State filed a motion to amend Count II of the indictment on the ground that the omission of that element was a "scrivener's error." The State noted in the motion that evidence of the possession of the firearm (witness statements and video) had been presented to the grand jury. As Wilson notes in his brief, nothing in the record indicates that the court ever ruled on this motion, and the indictment was never amended; this is because Wilson entered a guilty plea. At the plea hearing, the district attorney went through the elements that it would have to prove, including that Wilson killed the victim "without the authority of law and possessing that firearm after having previously been convicted of a felony."[7] The trial judge asked Wilson if he agreed with the State's

---

result." *Buffington v. State*, 824 So. 2d 576, 580 (¶15) (Miss. 2002).

[7] We held in *Strickland* that "[t]he State's clarification at the plea hearing that the factual basis was 'that Strickland caused serious bodily injury to the victim' does not cure the defect in the indictment." *Strickland*, 417 So. 3d at 193 (¶13).

12

recitation of charges, and he answered, "Yes, ma'am." Wilson then entered a plea of guilty to possession of a firearm by a felon.

¶23. Wilson argues that the failure to include the language that he possessed a firearm was an essential element and rendered the indictment defective. The State contends that the header to Count II expressly stated, "POSSESSION OF A FIREARM BY A CONVICTED FELON," and the body of the text "cited the correct statute under which he was charged." Wilson, however, asserts, "If the title and citation to a statute were enough, then the requirement that an indictment 'provide a concise and clear statement of the elements of the crime charged would become meaningless.'" (Quoting *Strickland*, 417 So. 3d at 192).

¶24. We determine that the State's request to amend concerned a matter of substance, rather than form. The supreme court has held that "for any formal defect," a trial court may, if necessary, amend the indictment as if such defect had not appeared"; but "[s]uch amendments . . . may pertain to matters of form only, not matters of substance." *Mixon v. State*, 921 So. 2d 275, 280 (¶15) (Miss. 2005). In *Thomas v. State*, 126 So. 3d 877, 879-80 (¶8) (Miss. 2013), the supreme court found that an indictment charging a formerly convicted felon with possessing "a knife" failed to charge him with "a crime cognizable under Mississippi law" and "require[d] dismissal of the indictment." *See also Brewer v. State*, 351 So. 2d 535, 536-37 (Miss. 1977) (holding that an indictment's omission of "an essential ingredient of the indictment" was a matter of substance, not form, and could not be amended).

13

¶25. In accordance with our analysis of the first issue, we find that Count II failed to charge Wilson with a crime cognizable under the law.

## Conclusion

¶26. Because we find that Wilson's indictment is void for failing to charge him with crimes cognizable under Mississippi law, we vacate his convictions and sentences. We remand this case and order the Appellant be held for further action by the grand jury.

¶27. **VACATED AND REMANDED.**

 **WESTBROOKS, McDONALD AND EMFINGER, JJ., CONCUR. WILSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY EMFINGER AND WEDDLE, JJ.; LAWRENCE AND LASSITTER ST. PÉ, JJ., JOIN IN PART. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND LASSITTER ST. PÉ, J.; LAWRENCE, J., JOINS IN PART.**

 **WILSON, P.J., SPECIALLY CONCURRING:**

¶28. I concur that Mississippi Supreme Court precedent requires us to vacate Wilson's convictions for the following reasons:

- The killing of a human being is an essential element of a murder,[8] but Wilson's indictment fails to allege that he killed anyone.

- Possession of a firearm is an essential element of the crime of felon in possession of a firearm,[9] but Wilson's indictment fails to allege that he possessed a firearm.

- "[A] challenge to an indictment for failure to charge the essential elements of a criminal offense *affects a fundamental right, and may not*

---

[8] *Brown v. State*, 965 So. 2d 1023, 1030 (¶27) (Miss. 2007).

[9] *Pegues v. State*, 426 So. 3d 1078, 1085 (¶36) (Miss. 2026).

14

*be waived*."[10]

- "An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions *and is void*."[11]

¶29.    Over twenty-five years ago, this Court split five-to-five on a similar issue. *See Jones v. State*, 770 So. 2d 578 (Miss. Ct. App. 2000). Jones pled guilty to escaping from the penitentiary but later sought post-conviction relief (PCR) on the ground that his indictment failed to allege that he escaped or attempted to escape from the penitentiary. *Id.* at 578-80 (¶¶1, 4-5). The lead opinion, joined by five judges, acknowledged that the Mississippi Supreme Court had held that a guilty plea does not waive the failure of an indictment to charge an essential element of a crime. *Id.* at 580 (¶5). However, the lead opinion found that Jones's indictment was sufficient because its heading stated, "Escape 97-9-45," referencing Mississippi Code Annotated section 97-9-45 (Rev. 1994), which defined the crime of escape from the penitentiary. *Id.* at 579-80 (¶¶5-6). In contrast, the dissent, which was also joined by five judges, maintained that the missing element could not be supplied by mere reference to the statute or by a "disembodied word" "floating about on the face of the indictment." *Id.* at 582-85 (¶¶13-34) (Southwick, P.J., dissenting).

¶30.    Twenty-four years later, we revisited the same basic issue and again divided five-to-five in *Daniels v. State*, 385 So. 3d 848 (Miss. Ct. App. 2024). In *Daniels*, the five-judge lead opinion found that a murder indictment was sufficient because it referenced the statute

---

[10] *Hathorne v. State*, 376 So. 3d 1209, 1215 (¶19) (Miss. 2023).

[11] *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013) (emphasis added).

15

defining the crime and because its heading "explicitly stated 'MURDER' in bold print." *Id.* at 853 (¶17). In contrast, the five-judge dissent found that the indictment failed to allege an essential element of the offense because it "fail[ed] to allege and charge that [the defendant] actually killed anyone!" *Id.* at 860 (¶47).[12] Given that this Court has been evenly divided on similar issues twice previously, this case may be a good candidate for certiorari review by the Mississippi Supreme Court.

¶31. Whenever our Supreme Court does address these issues, it should reconsider its prior holdings that an indictment's omission of an element "may not be waived" and renders the indictment "void." In *United States v. Cotton*, 535 U.S. 625 (2002), the United States Supreme Court held that "omissions" or "defects in an indictment do not deprive a court of its power to adjudicate a case." *Id.* at 630-31. The Court explained that a federal trial court has "jurisdiction" of all indictments for federal crimes, and an "objection that the indictment does not charge a crime against the United States goes only to the merits of the case," not the court's "jurisdiction . . . to determine the case." *Id.* (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916); *United States v. Williams*, 341 U.S. 58, 66 (1951)). The defect in *Cotton* was the indictment's failure to allege the quantity of drugs involved in a drug distribution conspiracy, a fact that was required to be charged in the indictment because it was considered

---

[12] There is no need to get creative with a murder indictment. "In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased." Miss. Code Ann. § 99-7-37(1) (Rev. 2020).

an "element" of the offense under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Cotton*, 535 U.S. at 627-29, 632. Nonetheless, the Supreme Court held that a defendant could forfeit or waive such a defect by failing to timely object. *Id.* at 631-34. Lower federal courts have interpreted *Cotton*'s holding as generally applicable to the failure of an indictment to allege an essential element of an offense—and therefore hold that a defendant may waive or forfeit an objection to such a defect, especially by pleading guilty.[13]

¶32. An indictment that fails to allege an essential element of an offense is defective and legally insufficient, and a timely filed motion to dismiss such an indictment should be granted. Trial courts should not hesitate to "dismiss indictments for the failure to state an offense" because "courts have as much of a responsibility to police criminal indictments as they do civil complaints." *United States v. Brewbaker*, 87 F.4th 563, 572 (4th Cir. 2023).

---

[13] *See, e.g.*, *United States v. Carr*, 303 F.3d 539, 542-44 (4th Cir. 2002) (affirming conviction despite indictment's failure to allege an essential element of the offense); *United States v. Martinez-Guerra*, 830 F. App'x 140, 143 (5th Cir. 2020) (holding that a guilty plea waived any claim that the indictment was "legally insufficient because it failed to contain each essential element of the offense"); *United States v. Hobbs*, 953 F.3d 853, 856 (6th Cir. 2020) ("Nothing in *Cotton* purported to limit its reasoning to the omission of *Apprendi* elements. Instead, *Cotton* broadly rejected 'the view that indictment omissions deprive a court of jurisdiction.'"); *United States v. Brown*, 752 F.3d 1344, 1351 n.3, 1354 (11th Cir. 2014) (holding that an indictment's failure to allege an essential element of the offense does not deprive the court of jurisdiction and is waived by a guilty plea); *see also, e.g.*, *Ex parte Seymour*, 946 So. 2d 536, 536-39 (Ala. 2006) (holding that an indictment's failure to allege an essential element of the offense is not a jurisdictional defect and may be waived if it is not raised at trial or on direct appeal). In *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), the Supreme Court granted "certiorari to answer the question whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error," but the Court ultimately decided the case on other grounds. *Id.* at 103-04.

¶33. But precisely because such a defect is *apparent on the face of the indictment*, there is no excuse for a defendant's failure to raise the issue early in the case—certainly prior to a guilty plea or trial. Any other rule encourages sandbagging. If the defendant objects to a defective indictment early in a criminal case, the State can cure the defect by obtaining a superseding indictment. But if that defect "may not be waived" and renders the indictment "void," the defendant has an incentive to hold the issue in his back pocket in case he is convicted at trial or later wants to undo his guilty plea.

¶34. There is no reason to set aside a valid guilty plea based on such an omission. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* A defendant waives many important constitutional rights by pleading guilty. *Bishop v. State*, 812 So. 2d 934, 945 (¶39) (Miss. 2002). There is no sound reason to hold that an indictment's omission of a single element is a unique type of error that can never be waived.

¶35. The facts of this case illustrate why an indictment's omission of an element should be subject to ordinary rules of forfeiture and waiver. Count I of Wilson's indictment charging him with "murder" failed to specifically allege that the victim was killed. But it appears that no one—including Wilson, his original lawyer, or his PCR attorneys—even noticed the issue

18

until this Court raised it sua sponte more than eight years after Wilson's plea. The omission clearly did not impact Wilson's decision to plead guilty or prejudice him in any way. Likewise, Count II of Wilson's indictment charging him with "possession of a firearm by a convicted felon" did not specifically allege that Wilson possessed a firearm. As the majority notes, the State recognized this defect prior to Wilson's plea and filed a motion to amend the indictment, but the State failed to obtain a ruling on its motion. Regardless, there is nothing to show that this omission impacted Wilson's decision to plead guilty or prejudiced him in any way either. I see no reason why Wilson's guilty plea should not operate as a waiver of any defect in his indictment. As stated above, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" and generally waives "claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. However, I concur with the majority that Wilson's convictions must be set aside because our Supreme Court has held that such errors "may not be waived" and render the indictment "void."

**EMFINGER AND WEDDLE, JJ., JOIN THIS OPINION. LAWRENCE AND LASSITTER ST. PÉ, JJ., JOIN THIS OPINION IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶36. I agree wholeheartedly with the majority that this Court can *sua sponte* review the sufficiency of an indictment when a defect is apparent. As our Supreme Court has recently (and unanimously) held, "longstanding precedent places great emphasis on the protection of the right to challenge the sufficiency of an indictment," and accordingly, "challenge[s] to the

19

substantive sufficiency of [an] indictment cannot be waived." *Hathorne v. State*, 376 So. 3d 1209, 1215 (¶20) (Miss. 2023). And since a missing element is a jurisdictional defect, Wilson or his counsel could have also raised it at any time. *Id.*; *see also Taylor v. State*, 429 So. 3d 356, 365 (¶51) (Miss. Ct. App. 2025), *cert. denied*, 429 So. 3d 313 (Miss. 2026).

## I.    Wilson was clearly charged in the indictment with murder.

¶37.    As to the actual indictment in this case, it sufficiently put Wilson on notice that he was being charged with murder. While certain language is missing from the body of the indictment, the caption clearly informs Wilson that he is being charged with murder. Both our precedent and common sense allow us to safely affirm in this instance.

¶38.    In relevant part, Wilson's indictment reads:

### COUNT I
### FIRST DEGREE MURDER

**DONALD WILSON** on or about the 3rd day of July, 2016, in Holmes County, Mississippi, did unlawfully, feloniously, willfully with deliberate design to effect the death of Christopher Robertson, a human being, to wit: by shooting Christopher Robertson, in violation of Section 97-3-19(1)(a) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

¶39.    As the majority points out, other than in the caption, the language of the count does not say Wilson murdered anyone, and does not say that he actually killed the victim.

¶40.    It is well-settled that "'[t]he purpose of the indictment is to serve notice of the charges against the defendant and the facts underlying such charges.'" *Dartez v. State*, 271 So. 3d 733, 742 (¶33) (Miss. Ct. App. 2018) (quoting *Culp v. State*, 933 So. 2d 264, 277 (¶40)

20

(Miss. 2005)). "'This does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to have been violated.'" *Id*.

¶41. We recently grappled with a very similar question in a case where a defendant argued "that his indictment was fatally defective as to the murder charge." *Daniels v. State*, 385 So. 3d 848, 852 (¶9) (Miss. Ct. App. 2024). We agreed with the defendant that the indictment "omitted that [the defendant] 'killed' or 'murdered'" the victim. *Id*. at (¶12). We found that the omission of this language rendered the indictment defective. *Id*. However, we did not find this defect to be a fatal, reversible flaw. *Id.*

¶42. In coming to this determination, we noted that the defendant "raised no objection to his indictment until after his conviction and sentencing," and "fail[ed] to allege that his indictment provided unfair notice, inadequate information, or insufficient time to prepare a defense." *Id*. at 852-53 (¶16).

¶43. We also determined that:

> The face of [the] indictment provided adequate notice of his charge for first-degree murder. The heading for Count I of the indictment explicitly stated "MURDER" in bold print, and the body of Count I referenced Mississippi Code Annotated section 97-3-19 (Supp. 2017), which is the Mississippi statute that sets out the crimes of murder. In addition, Count I of [the] indictment explicitly stated that [the defendant] had acted "with deliberate design to effect the death" of Washington, and as section 97-3-19(1)(a) explains, first-degree murder is accomplished 'with deliberate design.'

*Id.* at 853 (¶17).

21

¶44. So not only did Daniels then receive "adequate notice of his charge" when the indictment emphasized "MURDER," the "pretrial proceedings and the State's discovery disclosures provided additional evidence of fair notice regarding [his] first-degree-murder charge." *Id.* For instance, he "personally signed two affidavits of indigency stating he had been charged with 'murder,'" likewise he "was also served with a capias that stated he had been charged with 'murder,' and sought "a trial continuance" where he pointed out he was charged with murder. *Id.*

¶45. In discovery, Daniels also received:

> crime-scene reports, photographs, and video footage; witness statements; the gun Daniels had used to commit the crime; the bullets recovered from the crime scene; the crime laboratory's report on the bullets; [the victim's] autopsy report and photographs; and Daniels's Facebook Live video of the shooting.

*Id*. at (¶19). Given these facts, we found that while the indictment was defective, it "constituted harmless error[.]" *Id*. at (¶20).

¶46. Our decision in *Daniels* was built upon the structure set out by our Supreme Court, which largely cast scorn on defective indictments, but which established that like other failures they could be subject to a harmless error analysis. *Quang Thanh Tran v. State*, 962 So. 2d 1237, 1248 (¶¶42-43) (Miss. 2007). Over heated dissent, the majority in that case found the "indictment was defective for failure to specify the unlawful activity, but . . . further f[ound] the indictment's defect was harmless error." *Id.* at (¶44).

¶47. The indictment in this case is nearly the same as the indictment in *Daniels*. Like that one, its heading explicitly stated "MURDER" in bold print. Like that one, the body of the

22

murder count referenced the correct statute, and referenced that Wilson had acted "with deliberate design to effect the death of Christopher Robertson, a human being[.]"

¶48. But Wilson's indictment actually contains *more* detail than the bare-bones and defective one in *Daniels*, because the one at hand alleges that Wilson committed the crime "by **shooting** Christopher Robertson," which necessarily implies that a firearm was used in the attack. (Emphasis added).

¶49. And like *Daniels*, there is a surplus of information that Wilson was aware of the charges he was facing. In his petition to plead guilty—which he signed—there is form language that says "My lawyer advises me that the elements of the charge to which I am pleading guilty are as follows," and then typewritten is the sentence "Willfull[y], lawfully [sic] and feloniously cause[d] the death of another person with deliberate design to do so by shooting him with a firearm."

¶50. During a hearing, Wilson told the judge he read the petition and he understood it. He told the trial court he knew he was pleading guilty to second degree murder and possession of a firearm by a convicted felon, and he knew the nature of these charges.

¶51. When asked if he agreed with the State's version of events—that he was "in a drug transaction" with the victim which "escalated into a verbal altercation" which turned physically violent, with Wilson then shooting the victim several times—Wilson said "Yes, ma'am."

¶52. Notably, the State represented "This was captured on video" and there were also

23

"several eye witnesses that . . . corroborates what is shown in the video."[14] And Wilson ultimately told the trial court "I'm guilty."

¶53. Just as we concluded in *Daniels*, we should find this indictment defective—but that given the factual and legal circumstances, any error was harmless. In doing so, we follow our recent precedent in *Daniels* and the Supreme Court's establishment of a harmless error analysis in *Tran*.[15]

¶54. Wilson's indictment was captioned MURDER, the correct statute was cited, the victim was named, the method of murder illustrated, and there was language which tracked the statute. Any defect in this instance was harmless. Accordingly, I respectfully dissent from the decision to vacate his guilty plea for murder.

\* \* \*

¶55. I note that this Court has recently been forced to grapple with a veritable plague of

---

[14] Wilson himself pointed out in a later filing that he knew the names of at least four people who witnessed the shooting.

[15] The majority sweeps past *Daniels* without surfacing that it is overruling it. But that is exactly what we are doing. Of course we can overrule our own precedent, but *Daniels* merely applied the harmless error rule from *Tran*—and we cannot overrule our High Court.

In Judge Emfinger's thoughtful separate opinion to *Daniels*, which the majority today adopts, he pointed out that case was decided by the Supreme Court prior to the adoption of the Rules of Criminal Procedure. Yet just recently, the Supreme Court incorporated large swaths of *Tran* into a challenge brought under the Rules of Criminal Procedure to whether an aggravated assault indictment was defective. *Miller v. State*, 422 So. 3d 961, 965 (¶16) (Miss. 2025). The indictment left out the word "recklessly," but it cited the correct statute and "sufficiently put [the defendant] on notice of the charges against him." *Id*. at (¶17). The Court unanimously found the indictment was not defective because it "sufficiently set forth the elements of aggravated assault." *Id*. at 966 (¶19). If *Tran* had lost a step due to the adoption of the Criminal Rules, I do not think the Court would have used it in this fashion.

defective, near-defective, or just plain busted indictments. It is extremely concerning that this Court has faced repeated challenges to these crucial charging documents for lacking the most basic components of notice. Relatedly, we have time and again had to vacate habitual convictions due to the failure to prove the modest requirements of two prior felony convictions.

¶56. Our Constitution of 1890 guarantees every Mississippian the "right . . . to demand the nature and cause of the accusation," and our Rules of Criminal Procedure have clearly delineated how that notice is to be provided. The Executive Branch must turn its attention to drafting clear, statute-conforming, and proper indictments which tick every single box of the Rule, precedent, and our Constitution.

## II. Wilson was clearly charged in the indictment with possession of a firearm by a convicted felon.

¶57. If we properly followed our Supreme Court's precedent in *Tran*, we should then proceed to review the claims that Wilson directly raised in his PCR, which are the ambiguity of his plea to habitual offender status and whether Count II of his indictment properly warned him he was being charged with possession of a firearm by a convicted felon.

¶58. Like the defective first count, the second count against Wilson failed to include language in its body that he possessed a firearm as a felon. However, the caption of Count II reads "POSSESSION OF A FIREARM BY A CONVICTED FELON." Even Wilson's own argument in this case concedes he had a firearm—he just argues the homicide was in self-defense.

25

¶59. For the same reasons above, while defective, this is harmless error.

### III. Habitual offender status was not established.

¶60. However, Wilson is correct on one point, and it cannot be salvaged by harmless error. He argues that he did not "knowingly" plead guilty as a habitual offender. He also notes that the circuit court "enhanced [his] sentences without any proof being presented to the court to make that determination." And he is right.

¶61. Regarding the State's failure to provide copies of the sentencing orders for the prior convictions as evidence, our Court has held that "the requirement that the State prove the existence of the prior convictions beyond a reasonable doubt was negated by [the defendant's] decision to enter a guilty plea." *Easley v. State*, 60 So. 3d 812, 816 (¶15) (Miss. Ct. App. 2011).

¶62. In this case, the indictment did inform Wilson that he was being charged as a habitual offender, listed his prior felony convictions, stated that the prior crimes had been committed at different times and that he was sentenced to at least one year for each conviction.

¶63. However, in the plea petition, under the sentence recommendation, the phrase "No enhancements" was typed in, but crossed out by hand. Wilson signed the petition at the bottom of the page, but he did not initial beside the stricken phrase. It is Wilson's contention that this change to the language occurred after he signed the petition. Nothing in the record indicates when the petition was revised or if Wilson knew of these changes when he signed

the petition.[16]

¶64.    Furthermore, as Wilson's attorney pointed out at the PCR hearing, "there was never any specific admission by Mr. Wilson [during the plea colloquy] that he was an habitual offender.  Nor was there any proof presented at the guilty plea hearing by the State that Mr. Wilson was an habitual offender."

¶65.    Mississippi Rule of Criminal Procedure 15.3(d)(2) provides:

> (d) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to a felony or a misdemeanor with the possibility of incarceration, the defendant may be placed under oath and it is the duty of the trial court to address the defendant personally in open court to inquire and determine:
> . . . .
>
> (2) That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law. . . .

MRCrP 15.3(d)(2).

¶66.    Here, although the indictment noted that Wilson was being charged as a habitual offender, this portion of the indictment was not read at the plea colloquy.  Additionally, Wilson negotiated a plea with the State to lesser charges for second-degree murder in exchange for his pleading guilty.  The typed phrase "No enhancements" in the petition, which was later crossed out, further suggests that Wilson initially may not have been going to be sentenced as a habitual offender as part of the plea negotiation.

---

[16] An affidavit by Wilson's trial attorney states that she "advised Mr. Wilson that he would be *charged* as a habitual offender," but the attorney did not specify when this occurred. (Emphasis added).

27

¶67. Additionally, I see no evidence or testimony from the plea colloquy which indicates that Wilson was aware he was being sentenced as a habitual offender.[17] Nor did it appear that the trial court was aware of this fact, as the court did not make an inquiry as to Wilson's habitual status or ask if he was pleading as a habitual offender. In fact, the trial judge advised Wilson during the plea colloquy that for second-degree murder, the court could give him "a minimum of twenty and a maximum of forty years," and for Count II, "a minimum of two and a maximum of ten years." It was not until the trial court had accepted Wilson's guilty pleas that the State then recommended that his two sentences "be served concurrently and as an habitual offender."

¶68. The trial judge, seemingly surprised, asked, "As a[] habitual?", as this was the first time in the plea colloquy that the term "habitual offender" had been used. When the State replied in the affirmative, the trial judge then called Wilson to the podium and sentenced him to the maximum sentences "as an habitual, pursuant to [section] 99-19-81," without questioning Wilson as to his habitual status.

¶69. I would find that the record does not reflect that Wilson knowingly entered his plea *as a habitual offender*, requiring our Court to reverse and render on this issue for the trial court to re-sentence Wilson on remand.

**CARLTON, P.J., AND LASSITTER ST. PÉ, J., JOIN THIS OPINION.**

---

[17] In fact, although the plea petition noted that he had been previously convicted of a felony for aggravated assault in October 2012 and May 2013, it did not state that the crimes had been committed at different times or that he had been sentenced to at least one year for each of those convictions.

**LAWRENCE, J., JOINS THIS OPINION IN PART.**